IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KIPP FLORES ARCHITECTS, LLC,<br>*Plaintiff*<br><br>-vs-<br><br>PRADERA SFR, LLC, AMERICAN HOUSING VENTURES, LLC, KTGY GROUP, INC.,<br>*Defendants* | SA-21-CV-00673-XR |

## ORDER

On this date, the Court considered Defendants Pradera SFR's and American Housing Ventures' motions to dismiss (ECF Nos. 65, 66), Plaintiff Kipp Flores Architects respective responses (ECF Nos. 69, 70), and Pradera SFR's and American Houston Ventures' replies (ECF Nos. 76, 78). The Court additionally held oral argument on the motions. After careful consideration, the Court issues the following Order.

## BACKGROUND

Plaintiff Kipp Flores Architects ("KFA") is an architectural firm. KFA owns the copyrighted works that are the subject of this lawsuit. ECF No. 60 at 4. Defendants Pradera SFR ("Pradera") and American Housing Ventures ("AHV") are real estate developers in the San Antonio area. *Id.* at 2–3. Defendant KTGY is an architectural firm. *Id.* at 2. Defendants all worked jointly in constructing the Pradera Project, a real estate development located in the San Antonio area. *Id.* at 3.

In January 2016, KFA and AHV executed a licensing agreement for the use of the KFA's copyrighted works in the Austin, Texas market. *Id.* at 5. Pursuant to the agreement, KFA

1

provided copies of its architectural plans to AHV, which included copyright management information ("CMI") in electronic form. *Id.* at 5–6.

As part of the Austin development project, AHV engaged third-party AGS Graphics to generate stylized floorplan drawings of KFA's architectural works for marketing purposes. *Id.* at 9. AHV also engaged third-party BluEnt to create three-dimensional renderings of the architectural works. *Id.* at 12. Both AGS Graphics and BluEnt executed limited use licensing agreements with KFA, and KFA provided copies of the works to AGS Graphics and BluEnt. *Id.* at 9, 12. KFA alleges that the copies of its architectural plans it provided contained KFA's CMI, but the floorplans and three-dimensional renderings did not contain KFA's CMI. *Id.* at 9–21.

In 2017, Defendant Pradera SFR engaged AHV as the development manager for the Pradera Project. *Id.* at 27. AHV contacted KFA and advised KFA that it wanted to use the previously licensed works for the Pradera Project. *Id.* KFA sent Pradera SFR a copy of its contract terms. *Id.* at 29. KFA and Pradera SFR then executed a licensing agreement for use of KFA's amenities center design at the Pradera Project. *Id.* at 30. However, the parties never reached an agreement regarding the use of KFA's residential designs. *Id.*

In November 2017, Pradera SFR and AHV engaged architectural firm KTGY to design residences for the Pradera Project. *Id.* at 31. KFA alleges that Pradera and AHV distributed copies of KFA's architectural works to KTGY and others, and that AHV asked KTGY to create "similar layouts" as the KFA architectural works for use in the Pradera Project. *Id.* at 102–03. KFA further alleges that KTGY developed the "Bluebonnet" style homes for construction, which are "copies" or "derivatives" of KFA's designs. *Id.* at 103–05.

Based on these allegations, KFA first asserts that all Defendants' conduct constitutes infringement of its copyrighted works. *Id.* at 109–14. KFA further alleges that Defendants AHV

and Pradera violated the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(b)(3), by distributing the AGS and BluEnt floorplans and renderings of its works to KTGY and others "knowing that copyright management information has been removed or altered without authority of the copyright owner or the law." *Id.* at 114–16.

Both Pradera and AHV move for dismissal of KFA's DMCA claim. AHV further moves for dismissal of KFA's direct and contributory infringement claims.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to

support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II.    Analysis

Pradera and AHV move for dismissal of KFA's DMCA claim because, they argue, KFA's CMI was never "removed" within the meaning of § 1202. AHV further moves for dismissal of KFA's direct and contributory copyright infringement claims.

### A. Digital Millennium Copyright Act

A plaintiff must allege the following to plead a claim under the DMCA, § 1202(b): "(1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant 'distribute[d] . . . works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or . . . having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or

4

conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting *Univ. City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001)) (alterations in original). Pradera and SFR contend that KFA has failed to allege a claim under the DMCA because KFA's CMI was never "removed or altered" from its architectural works.

Pradera and AHV both contend that KFA cannot state a claim under § 1202(b)(3) because its CMI was not "removed" by AGS Graphics or BluEnt. Instead, they argue, when AGS Graphics and BluEnt created the floorplans and three-dimensional renderings, KFA's CMI was not affirmatively added, which cannot give rise to liability under the DMCA. The Court agrees. "Removal" of CMI from a copyrighted work is not the same as the failure to add CMI to a nonidentical rendition or a derivative of the protected work.

To establish liability under the DMCA, CMI must have been "removed" from the copyright owner's work. 17 U.S.C. § 1202. Merriam-Webster Dictionary defines "remove" as "taking away or off," or "to get rid of" something. *Remove*, Merriam-Webster, https://www.merriam-webster.com/dictionary/remove (last visited April 6, 2022). Thus, to establish a claim under the DMCA, a plaintiff must allege that CMI was once present on her work and later taken away. Here, CMI was not "taken away" or "gotten rid of." *See* ECF No. 60 at 9–22. Instead, KFA alleges that AGS and BluEnt used KFA's architectural plans to generate nonidentical renditions of KFA's copyrighted works. *Id.* AGS and BluEnt's works never included KFA's CMI in the first place. CMI cannot be "removed" from a new work that never included CMI to begin with.

KFA argues that the DMCA applies where a defendant has not maintained the plaintiff's CMI on copies of the plaintiff's works, contending that the Court's interpretation "rewrites" the DMCA by including "additional elements." ECF No. 69 at 9–10. To the contrary, the Court's

interpretation merely applies the plain meaning of the term "remove" to the facts before it. KFA additionally cites *Preston Wood & Associates, LLC v. RZ Enterprises USA, Inc.*, No. H-16-1427, 2018 WL 2059244 (S.D. Tex. May 3, 2018), for the proposition that the DMCA applies in this case. However, *Preston Wood* is distinguishable from the present case. In *Preston Wood*, the defendants merely asserted—without evidence in a motion for summary judgment—that they had produced the works that did not include the plaintiff's CMI "from scratch." *Id.* at *2. There, the court concluded that there was "ample evidence to raise a genuine issue of material fact . . . regarding whether Defendants created their marketing materials 'from scratch' or, instead, by using Plaintiff's architectural works from which Defendants had removed or altered copyright management information." *Id.* Here, KFA specifically alleges that AGS and BluEnt created new works based on KFA's architectural designs when AGS and BluEnt produced the floor plans and renderings. ECF No. 60 at 9–22. Critically, the court in *Preston Wood* did not expressly discuss the meaning of "remove" within the context of the DMCA. *See Preston Wood & Assocs., LLC*, 2018 WL 2059244, at *2.

Furthermore, several courts have interpreted the DMCA as the Court does here. For example, in *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2019 WL 527535 (N.D. Ill. Feb. 11, 2019), the plaintiff brought a DMCA claim, alleging that the defendant "remov[ed] or omit[ed] Plaintiffs' CMI from [the] infringing plans." *Id.* at *5. The court dismissed the plaintiff's DMCA claim, reasoning that the plaintiff had not alleged that the defendant "directly reproduced their plains without CMI." *Id.* Rather, the defendant copied aspects of the original work and did not include plaintiffs CMI, and "[b]asing a drawing on another's work is not the same as removing copyright management information." *Id.* (quoting *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496 SOM/BMK, 2014 WL 5798282, at

*5, 7 (D. Haw. Nov. 7, 2017)). Likewise, in *Huffman v. Activision Publishing*, No. 2:19-cv-00050-RWS-RSP, 2020 WL 8678493 (E.D. Tex. Dec. 14, 2020), *report and recommendation adopted*, 2021 WL 2141352 (E.D. Tex. May 26, 2021), the court concluded that the DMCA does not establish liability for "the mere failure to add truthful CMI to a copy." *Id.* at *11; *see also Faulkner Press, LLC v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) (concluding that CMI was not "removed" from the copyrighted works when the work was "allegedly copied into a different form and then incorporated into the note packages."); *Kirk Kara Corp. v. Stone & Metal Corp.*, No. CV 20-1931-DMG, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("[W]hile the works may be *substantially similar*, Defendant did not make *identical* copies of Plaintiff's works and then remove the engraved CMI. In such cases, even where the underlying works are similar, courts have found that no DMCA violation exists where the works are not identical." (emphasis in original)). Thus, KFA's DMCA claims against Pradera and AHV must be dismissed.

### B. Copyright Infringement

Defendant AHV further moves for dismissal of KFA's direct copyright infringement and contributory infringement claims. The Court discusses each claim in turn.

#### 1. Direct Infringement

A claim of copyright infringement requires that the plaintiff show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *BWP Media USA Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). AHV does not dispute the validity of KFA's copyrights; rather, it disputes that KFA has plausibly alleged that AHV copied KFA's protected works. ECF No. 65 at 9–12. To demonstrate actionable copying under the

7

second element of infringement, first "the plaintiff must, as a factual matter, prove that the defendant 'actually used the copyrighted material to create his own work.'" *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (quoting *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994)). Next, the plaintiff must "demonstrate that the copying is legally actionable by showing that the allegedly infringing work is substantially similar to protectable elements of the infringed work." *Id.* at 142.

AHV asserts that KFA's allegations of copying are conclusory because KFA has failed to identify the protectible elements of its copyrighted works or make a side-by-side comparison of the copyrighted work and the alleged infringing work to show substantial similarity. *See* ECF No. 65 at 9–11. Both arguments fail for the same reason. At the pleading stage, it is not KFA's burden to allege the protectible elements of its works or to make a side-by-side comparison.

KFA is not required to prove each element of its copyright claim in its Complaint; it need only "provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P.*, 995 F. Supp. 2d at 602. KFA has fulfilled its burden to allege such facts. Specifically, KFA has alleged that AHV had access to KFA's architectural plans prior to the construction of the Bluebonnet homes at the Pradera Project, and that the Bluebonnet homes are "copies [of] original expressions of KFA Plan 1529, including the overall look and feel of the works and the selection and arrangement of the constituent parts of the works." ECF No. 60 at 5, 105. Further, KFA identifies numerous instances in which AHV reproduced and distributed copies of KFA's architectural works, either of the plans themselves, by constructing the Bluebonnet homes at Pradera, or by AHV's creation and distribution of marketing materials in connection with the Pradera Project. *Id.* at 104–05. These allegations are sufficient and give AHV notice of the claims against it. *See Gen. Univ. Sys.*, 379 F.3d at 142

(stating that "the question whether two works are substantially similar should be left to the ultimate factfinder"); *Guzman v. Hacienda Records & Recording Studio, Inc.*, No. 6:12-CV-0042, 2013 WL 2189952, at *2 (S.D. Tex. May 20, 2013) (rejecting the notion that the plaintiff must identify the exact elements of his work that were allegedly copied in his complaint). Therefore, KFA's allegations suffice to state a claim against AHV for direct infringement.

### 2. Contributory Infringement

"A claim of contributory infringement requires allegations that the defendant intentionally induced or encouraged direct infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Groskster, Ltd.*, 545 U.S. 913, 930 (2005). AHV argues that KFA has failed to allege any act of direct infringement by "any third party," and that the allegations that AHV distributed copies of KFA's architectural plans to Pradera and KTGY do not suffice for a claim of contributory infringement. ECF No. 65 at 16. This argument also fails. While AHV is correct that merely distributing the architectural works to third parties is insufficient to state a claim for contributory infringement, KFA has alleged that AHV distributed the works to KTGY and Pradera, asked KTGY to refine the design, and then caused KTGY and Pradera to construct the design. ECF No. 60 at 104–05. Constructing a protected architectural design without the copyright owner's permission may constitute infringement. *See, e.g.*, *Hewlett Custom Home Design v. Frontier Custom Builders, Inc.*, 588 F. App'x 359, 360–61 (5th Cir. 2014) (affirming a jury verdict that the defendant had infringed on plaintiff's designs by constructing plaintiff's architectural designs); *Glenntex, Inc. v. Drennan Day Custom Homes, Inc.*, No. 1:18-CV-973-LY, 2019 WL 6251455, at *3–4 (W.D. Tex. Nov. 21, 2019), *report and recommendation adopted*, 2019 WL 13150084 (W.D. Tex. Dec. 11, 2019) (denying a motion to dismiss a plaintiff's copyright infringement claim that defendant constructed the home depicted in the plaintiff's architectural

plans). Because KFA has alleged that AHV induced Pradera and KTGY to infringe upon its architectural designs, KFA has stated a claim for contributory infringement.

## CONCLUSION

For these reasons, Defendant Pradera SFR's motion to dismiss (ECF No. 66) is **GRANTED**. Defendant AHV's motion to dismiss (ECF No. 65) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's DMCA claims against Defendants Pradera SFR and AHV are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

**SIGNED** this 13th day of April, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE